ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of - ) | |
| ) | |
| ServeFed, Inc. ) | ASBCA No. 63290 |
| ) | |
| Under Contract No. W81K00-19-P-0137 ) | |

APPEARANCE FOR THE APPELLANT:     Edward J. Tolchin, Esq.
                                                 Offit Kuman, PA
                                               Bethesda, MD

APPEARANCES FOR THE GOVERNMENT:     Andrew J. Smith, Esq.
                                                 Acting Army Chief Trial Attorney
                                             LTC Michael R. Tregle, Jr., JA
                                               Trial Attorney

OPINION BY ADMINISTRATIVE JUDGE SWEET
ON THE PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT

      In this appeal, appellant ServeFed, Inc. (ServeFed) challenges a United States Army (government) performance evaluation that assigned ServeFed an Unsatisfactory Quality rating and an Unsatisfactory Schedule rating. ServeFed moves for summary judgment, and the government cross-moves for summary judgment. Because there are genuine issues of material fact regarding whether that evaluation violated the applicable regulations and was fair and accurate, we deny the motions.

STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTION

I.      Contract

1. On March 19, 2019, the government and ServeFed executed contract W81K00-19-P-0137 (Contract) for healthcare staffing services at Fort Hood (now Fort Cavazos), Texas (R4, tab 1 at 1-45, 80).

2. Acceptable measures are defined under the Contract as including:

> Fill rate-95%; employee turnover rate-less than 25% per year, substantiated patient complaints-max 2 per year, per provider; no provider initiated cancellation of treatments except as medically required by patient, or provider illness or emergency leave (and approved by government supervisor or designee). . . . Other performance evaluation

factors will be monitored that are not qualified by numerical measures which include: contractor providing personnel exceeding the minimum qualification standards; timely patient follow-up when necessary; patient customer service comments; provider and contractor relationship with hospital staff/government contracting personnel; compliance with all hospital policies and procedures.

(R4, tab 1 at 80-81 (emphasis added))

II.     The Federal Acquisition Regulation

3.  At the time of contract award and performance, the Federal Acquisition Regulation (FAR) provided that agencies should complete a Contractor Performance Assessment Reporting System evaluation (evaluation). 48 C.F.R. § 42.1503. The evaluation criteria included: (1) technical (quality of product or service); (2) cost control for contracts other than firm-fixed-price contracts; (3) schedule and timeliness; (4) management or business relations; (5) small business subcontracting; and (6) other factors, as applicable. *Id*. § 42.1503(b)(2).

4.  The Federal Acquisition Regulation defined the relevant ratings for each criteria as follows:

| Rating | Definition | Note |
|---|---|---|
| (b) Very Good | Performance meets contractual requirements and exceeds some to the Government's benefit. The Contractual performance of the element or sub-element being evaluated was accomplished with some minor problems for which corrective actions taken by the contractor were effective. | To justify a Very Good rating, identify a significant event and state how it was a benefit to the Government. There should have been no significant weaknesses identified. |
| (c) Satisfactory | Performance meets contractual requirements. The contractual performance of the element or sub-element contains some minor problems for which corrective actions taken by the contractor appear or were satisfactory. | To justify a Satisfactory rating, there should have been only minor problems, or major problems the contractor recovered from without impact to the contract/order. There should have been NO significant weaknesses identified. . . . |

2

| | | |
|---|---|---|
| (d) Marginal | Performance does not meet some contractual requirements. The contractual performance of the element or sub-element being evaluated reflects a serious problem for which the contractor has not yet identified corrective actions. The contractor's proposed actions appear only marginally effective or were not fully implemented. | To justify Marginal performance, identify a significant event in each category that the contractor had trouble overcoming and state how it impacted the Government. A Marginal rating should be supported by referencing the management tool that notified the contractor of the contractual deficiency (e.g., management, quality, safety, or environmental deficiency report or letter). |
| (e) Unsatisfactory | Performance does not meet most contractual requirements and recovery is not likely in a timely manner. The contractual performance of the element or sub-element contains a serious problem(s) for which the contractor's corrective actions appear or were ineffective. | To justify an Unsatisfactory rating, identify multiple significant events in each category that the contractor had trouble overcoming and state how it impacted the Government. <u>A singular problem, however, could be of such serious magnitude that it alone constitutes an unsatisfactory rating</u>. An Unsatisfactory rating should be supported by referencing the management tools used to notify the contractor of the contractual deficiencies (e.g., management, quality, safety, or environmental deficiency reports, or letters). |

48 C.F.R. § 42.1503, Table 42-1 (emphasis added).

III.     The Evaluations

5.  A Contractor Performance Report Sheet (Report Sheet) used by the government to evaluate ServeFed's performance of the contract stated that:

> Schedule Performance is defined as the reliability and timeliness of the contractor assessed against the completion of contract and task order dates established for delivery of services and administrative requirements. [Contracting officer's representatives] will consider fill rates, completion of privileging/credentialing packages,

3

and any other activities required for schedule performance. The fill rate percentage is calculated by dividing the total hours worked by the total hours ordered.

(App. supp. R4, tab 20 at 1)  The Report Sheet also stated that:

Quality of services will be scored by assessing the contractor's conformance to the contract requirements, performance work statement, and standards of quality . . . , and turnover rate.  An indicator of quality is the turnover rate of [healthcare providers] performing under the contract.  When stated in the contract/task order, the [contracting officer's representative] will consider turnover rate.  Turnover rate is defined as the number of times the Contractor must replace individual full-time contract [healthcare providers]. . . . Minimum acceptable turnover rates will be identified.

(*Id*.)  Finally, the Report Sheet contained the following table for the relevant ratings:

| Rating | Range | Description |
|---|---|---|
| Very Good | (81-90) | Performance meets contractual requirements and exceeds some to the Government's benefit.  The contractual performance of the element being assessed was accomplished with some minor problems for which corrective actions taken by the contractor were effective. |
| Satisfactory | (71-80) | Performance meets the contractual requirements.  The contractual performance of the element being assessed contains some minor problems for which corrective actions taken by the contractor appear or were satisfactory. |
| Marginal | (61-70) | Performance does not meet some contractual requirements.  The contractual performance of the element being assessed reflects a serious problem for which the contractor has not yet identified corrective actions.  The contractor's proposed actions appear only marginally effective or were not fully implemented. |
| Unsatisfactory | (Less than 61) | Performance does not meet most contractual requirements and recovery is not likely in a timely manner.  The contractual performance of the element contains serious problem(s) for which the contractor's corrective action appear or were ineffective. |

(*Id*. at 3)

4

6.  The contracting officer's deposition testimony is unclear about her understanding of the meaning of the percentages in the Report Sheet table's range column.  At one point, the contracting officer suggested that she understood that the percentages in the Report Sheet's range column equaled the fill and turnover rates by giving the following answer to the following question:

> Q:  Okay.  But then you just took the 53 [percent turnover rate] and you plugged it into less than 61.  Correct?  Is that what happened?
>
> A:  Yes.

(Johnson depo. at 30)  However, the contracting officer proceeded to suggest that she did not understand what the percentages in the Report Sheet's range column meant by giving the following answer to the following question:

> Q:  So what would I have gotten [if the turnover rate was 17 percent]? . . . [S]till unsatisfactory?
>
> A:  That shouldn't have been unsatisfactory, no.
>
> Q:  So how do you do it? . . . [O]r you just don't know.  If you don't know that's a—
>
> A:  Yeah, the first is you definitely looking at that.  But yeah, definitely if [the turnover rate] was 17 [percent the contractor] wouldn't have gotten unsatisfactory.
>
> Q:  But you just don't know how that's calculated though—
>
> A:  Right.

(*Id*. at 31-32)

7.  In earlier evaluations than the one challenged here—namely for the period between April 1, 2019 and September 30, 2019 (2019 Evaluation)—the government assigned a Satisfactory Quality rating and a Satisfactory Schedule rating, noting a fill rate of 50% (R4, tab 10 at 1).

8.  In another earlier evaluation than the one challenged here—namely for the period between October 1, 2019 and September 30, 2020 (2020 Evaluation)— the

5

government assigned a Satisfactory Quality rating and a Marginal Schedule rating. Due to information received from the contracting officer's representative and the fact that the clinic had been closed for approximately two to three months as a result of the COVID-19 pandemic, the government changed the 2020 Schedule rating to Satisfactory. (GASUMF ¶ 8; ARGASUMF ¶ 8) * The amended 2020 Evaluation stated that the "[v]endor's fill rate was 57%. Although the vendor fill-rate is unsatisfactory per the [Report Sheet], all other administrative requirements were adhered to 100% of the time." (R4, tab 26 at 2) The 2020 Evaluation also noted that there were 6 turnovers (*id.*).

9. The statement that the clinic was closed for several months due to the COVID-19 pandemic raises a genuine issue of material fact as to how much of the fill rate and turnover rate deficiencies in the 2019 and 2020 Evaluations were attributable to ServeFed, and about the government's reasons for those earlier evaluations (R4, tab 10 at 1, tab 26 at 2; GASUMF ¶ 8; ARGASUMF ¶ 8).

10. On November 30, 2021, the government issued an evaluation for the period between October 1, 2020 and September 30, 2021—which is the evaluation ServeFed challenges in this appeal (Challenged Evaluation). The Challenged Evaluation assigned ServeFed an Unsatisfactory Schedule Rating because:

> Vendors fill rate was 47.18%. The vendor was unsuccessful in [filling] 8 of 17 positions during this performance period. The [government's] mission changed and therefore, terminated for convenience 5 positions. The 3 remaining vacancies still remained unfilled. Complete privileging packets were submitted timely and accurately with communication with the vendor. Invoices were received and certified for payment in a timely manner each month.
>
> KS comments, letter of concern was sent on May 11, 2021 to the contractor in reference to the vacant positions on the contract. Cure Notice was sent to the contractor on September 17, 2021 for continued vacant positions on the contract.

(R4, tab 47 at 2-3) The Challenged Evaluation also assigned ServeFed an Unsatisfactory Quality rating because "[t]he vendor has complied with contract requirements, the performance work statement and standards of quality with the work

---

* GASUMF refers to the government's additional statement of undisputed material facts. ARGASUMF refers to ServeFed's response to the GASUMF.

staff but the turnover rate during this period of performance is 53% (9 departures)" (*id*.).  The Challenged Evaluation further assigned ServeFed a Satisfactory Other Areas (Business Relations) rating because "[t]he business relationship between the contractor and their employee[s] was absolutely satisfactory.  There were no issues or concerns brought to my attention or to the attention of the contracting officer.  Company complied with Contractor Manpower Reporting requirements." (*Id*.)  The Challenged Evaluation did not assign a cost rating or a small business subcontracting rating because this was a firm-fixed-price contract, and there was no small business subcontracting plan (*id*. at 1-2).  The Challenged Evaluation concluded by recommending against future awards (*id*. at 3).  Neither party has presented any evidence regarding whether any failure to support the Unsatisfactory ratings with reference to the management tools used to notify ServeFed of the contractual deficiencies—or any failure to indicate the impact on the government—prejudiced ServeFed.

IV.     Procedural History

11.  On December 6, 2021, ServeFed submitted a claim (R4, tab 48).  In that claim, ServeFed attached emails that raise a genuine issue of material fact as to whether at least some of the fill rate deficiencies and turnover rate deficiencies were attributable to the government (*id*. at 2-4, 9-10, 12-13, 20).

12.  On March 3, 2022, the contracting officer (CO) issued a final decision, changing the Schedule rating from Unsatisfactory to Marginal due to the government causing some delays in the security background check process.  However, the contracting officer declined to change the Schedule rating to Satisfactory.  The contracting officer's final decision also declined to change the Unsatisfactory Quality rating.  (R4, tab 50 at 4)

13.  To date, the contracting officer has not changed the Schedule rating (Johnson depo. at 44-45).

DECISION

Neither ServeFed nor the government is entitled to summary judgment.

I.     Summary Judgment Standard

We will grant summary judgment only if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  All significant doubt over factual issues must be resolved in favor of the party opposing summary judgment.  *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390 (Fed. Cir. 1987).  In deciding

summary judgment motions, we do not resolve controversies, weigh evidence, or make credibility determinations. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Moreover, we draw all reasonable inferences in favor of the non-movant. *Id*. "A genuine issue of material fact arises when the nonmovant presents sufficient evidence upon which a reasonable fact-finder, drawing the requisite inferences and applying the applicable evidentiary standard, could decide the issue in favor of the nonmovant." *C. Sanchez & Son, Inc. v. United States*, 6 F.3d 1539, 1541 (Fed. Cir. 1993).

II.      ServeFed is not Entitled to Summary Judgment

        ServeFed is not entitled to summary judgment on its appeal regarding the Challenged Evaluation.  In issuing an evaluation, a contracting officer must follow applicable regulations and provide an appellant with a fair and accurate evaluation. *ServeFed, Inc.*, ASBCA No. 63290, 23-1 BCA ¶ 38,282 at 185,877 (citing *PROTEC GmbH*, ASBCA No. 61161 *et al.*, 18-1 BCA ¶ 37,064 at 180,420).  "Generally, in order for a contractor to have standing to raise a procedural challenge, the contractor must show prejudice." *PROTEC GmbH*, ASBCA No. 61161 *et al.*, 19-1 BCA ¶ 37,362 at 181,684 (citing *Todd Constr,. L.P. v. United States*, 656 F.3d 1306, 1315-16 (Fed. Cir. 2011); *GSC Constr., Inc.*, ASBCA No. 58747, 14-1 BCA ¶ 35,714 at 174,868).  As discussed in greater detail below, there are genuine issues of material fact as to whether the government followed applicable regulations and the Challenged Evaluation was fair and accurate.

        A.       There is a Genuine Issue of Material Fact as to Whether the Government
                Followed Applicable Regulations

        There is a genuine issue of material fact as to whether the government followed applicable regulations.  ServeFed argues that the government did not follow the Federal Acquisition Regulation because its evaluation factors did not include: (1) technical (quality of product or service); (2) cost control for contracts other than firm-fixed-price contracts; (3) schedule and timeliness; (4) management or business relations; and (5) small business subcontracting.  (App. mot. at 11-12; SOF ¶ 3) However, the Report Sheet and the Challenged Evaluation show that the government evaluated the quality of the healthcare staffing services, the schedule and timeliness, and the business relations.  (SOF ¶¶ 5, 10)  While the government did not evaluate cost controls or small business subcontracting, that was because—as the Challenged Rating indicated—this was a firm-fixed-price Contract and there was no small business subcontracting.  (SOF ¶ 10)

        Indeed, ServeFed's real complaint appears to be not so much about the government's evaluation criteria as it is about the fact that the government relied upon a singular problem within the Schedule criteria and a singular problem within the Quality criteria—namely the purportedly deficient fill and turnover rates

respectively—to assign Unsatisfactory ratings. However, the Federal Acquisition Regulation permitted the government to base an Unsatisfactory rating upon a singular problem, stating that "[a] singular problem, however, could be of such serious magnitude that it alone constitutes an unsatisfactory rating." (SOF ¶ 4); *Odyssey Int'l, Inc.*, ASBCA No. 62085 *et al.*, 21-1 BCA ¶ 37,861 at 183,852 (holding that an unsatisfactory rating based upon a singular problem complied with the Federal Acquisition Regulation).

ServeFed also argues that the government did not follow the Federal Acquisition Regulation because it did not support the Unsatisfactory ratings with reference to the management tools used to notify ServeFed of the contractual deficiencies, or indicate the impact on the government (app. mot. at 13). The Federal Acquisition Regulation merely indicated that an evaluation "should" support an Unsatisfactory rating with reference to the management tools used to notify the contractor of the contractual deficiencies, (SOF ¶ 4), which renders the phrase permissive instead of mandatory. *Khuri v. United States*, 154 Ct. Cl. 58, 64 (1961). In any event, the government supported the Unsatisfactory Schedule rating with reference to the management tools used to notify ServeFed of the contractual deficiencies by stating that a "[l]etter of concern was sent on May 11, 2021 to the contractor in reference to the vacant positions on the contract. Cure Notice was sent to the contractor on September 17, 2021 for continued vacant positions on the contract." (SOF ¶ 10) Whether those management tools to notify ServeFed of the Contract deficiencies addressed the purported turnover rate deficiencies that underpinned the Unsatisfactory Quality rating too—and whether that was sufficient to support the Unsatisfactory Quality rating with reference to the management tool used to notify ServeFed of the contractual deficiencies—raise genuine issues of material fact. Further, there are genuine issues of material fact as to whether any failure to support the Unsatisfactory ratings with reference to the management tools used to notify ServeFed of the contractual deficiencies—or any failure to indicate the impact on the government —prejudiced ServeFed. (SOF ¶ 10)

Thus, ServeFed has not established as a matter of law that the government failed to follow applicable regulations.

B.      There is a Genuine Issue of Material Fact as to Whether the Challenged Evaluation was Fair and Accurate

There is a genuine issue of material fact as to whether the Challenged Evaluation was fair and accurate. ServeFed argues that the government improperly evaluated only the fill rate for the Schedule rating and the turnover rate for the Quality rating, while the Contract and the Report Sheet required the government to evaluate other criteria too. (App. mot. at 8-10; SOF ¶¶ 2, 5) However, the government did not only evaluate the fill rate for the Schedule rating; it evaluated other criteria by stating

9

that "[c]omplete privileging packets were submitted timely and accurately with communication with the vendor. Invoices were received and certified for payment in a timely manner each month" (SOF ¶ 10). Similarly, the government did not only evaluate the turnover rate for the Quality rating; it evaluated other criteria by stating that "[t]he vendor has complied with contract requirements, the performance work statement and standards of quality with the work staff . . . ." (*id.*).

Again, ServeFed's real complaint appears to be not so much about the government's evaluation criteria as it is about the fact that the government relied upon a singular problem within the Quality criteria and a singular problem within the Schedule criteria to assign Unsatisfactory ratings (app. mot. at 11). However, as discussed above, the Federal Acquisition Regulation permitted the government to base an Unsatisfactory rating upon a singular problem (SOF ¶ 5).

ServeFed also appears to argue that the 2019 and 2020 Evaluations established that the Challenged Evaluation was arbitrary because ServeFed received Satisfactory Quality ratings and Satisfactory Schedule ratings on the 2019 and 2020 Evaluations, despite purportedly similar fill and turnover rates (app. mot. at 10; app. reply at 19-20). As an initial matter, the initial 2020 Evaluation assigned a Marginal Schedule rating, and the final 2020 Evaluation expressly stated that the fill rate was unsatisfactory (SOF ¶ 8). In any event, the fact that ServeFed had different fill and/or turnover rates during those prior periods raises a genuine issue of material fact as to whether the different ratings for those prior periods establish that the Challenged Evaluation's ratings were unfair and inaccurate (SOF ¶¶ 7-8). Moreover, there are genuine issues of material fact as to how much of the fill rate and turnover rate deficiencies in the 2019 and 2020 Evaluations were attributable to ServeFed, or the result of other causes, such as the COVID-19 pandemic (SOF ¶ 9).

ServeFed next argues that the admission in the contracting officer's final decision that some of the fill rate deficiency was the government's fault renders the Challenged Evaluation's reliance upon the fill rate deficiency unfair and inaccurate (app. mot. at 13-14). However, there are genuine issues of material fact as to *how* much of the fill rate deficiency the government caused, and whether the fill rate deficiency attributable to ServeFed met the Contract's requirements.

ServeFed also argues that the government has not changed its Schedule rating to a Marginal rating yet, despite the contracting officer's final decision's conclusion that the Schedule rating should be so changed (app. mot. at 14). However, "[b]ecause we are 'required to assume that the Government [will] carry out the corrective action in good faith' . . . *Chapman Law Firm* [*Co. v. Greenleaf Const. Co, Inc.*], 490 F.3d [934,] 940 [Fed. Cir. 2007] (citations omitted), we assume that the government will" take the corrective action it indicated it would take in the contracting officer's final

decision. *HTA Aviation, LLC*, ASBCA No. 57891 *et al.*, 14-1 BCA ¶ 35,556 at 174,240.

ServeFed finally appears to argue that the Challenged Rating was unfair and inaccurate because the contracting officer purportedly testified during her deposition that the percentage in the Report Sheet table's range equaled the fill and turnover rates (app. mot. at 6-7, 14). However, the contracting officer's deposition testimony is unclear about her understanding of the meaning of the percentages in the Report Sheet table's range column (SOF ¶ 6). In any event, regardless of the contracting officer's subjective understanding of the meaning of the percentages in the Report Sheet table's range column, the Contract required a fill rate of 95 percent or more, and a turnover rate of less than 25 percent (SOF ¶ 2). However, according to the Challenged Evaluation, the fill rate was 47.18 percent and the turnover rate was 53 percent (SOF ¶ 10). Thus, the Challenged Evaluation raises a genuine issue of material fact as to whether ServeFed met the Contract's requirements, and thus whether a Marginal rating or an Unsatisfactory rating was unfair or inaccurate. Further, there are genuine issues of material fact as to whether any deficient fill and turnover rates were of such a serious magnitude that they alone constituted unsatisfactory ratings, and thus whether an Unsatisfactory rating in particular was unfair or inaccurate.

Therefore, ServeFed has failed to show that the Challenged Evaluation was unfair and inaccurate as a matter of law.

### III.     The Government is not Entitled to Summary Judgment

Nor is the government entitled to summary judgment. As with its motion to dismiss for failure to state a claim, the government again challenges whether particular turnover and fill rate deficiencies were the fault of ServeFed or the government. (Gov't mot. 8, 14) As we held in denying the motion to dismiss for failure to state a claim "whether particular turnover and fill rate deficiencies were the fault of ServeFed or the government raises factual issues . . . ." *ServeFed, Inc.*, 23-1 BCA ¶ 38,282 at 185,878. Moreover, there are genuine issues of fact regarding who was at fault for particular turnover and fill rate deficiencies. (SOF ¶ 11) Thus, the government is not entitled to summary judgment.

The government also argues that any such issues of fact are not material because the Contract is indifferent with respect to the cause of the deficiencies (gov't reply at 3). However, notwithstanding the contract's apparent silence on the manner, the Evaluation's ratings are required to be "fair," and penalizing a contractor for occurrences for which it bears no fault or responsibility (depending upon the facts, of course) may well be unfair. Here, there are material facts in dispute about how much responsibility the two parties respectively bear for ServeFed's filling deficiencies, which precludes us from determining whether the Evaluation was fair or not. Indeed,

11

the government appears to recognize that it is unfair to give ServeFed a negative rating for deficiencies beyond its control by arguing that it gave Satisfactory ratings in earlier evaluations because the COVID-19 pandemic justified turnover and fill rate deficiencies. (App. reply at 13) Therefore, the government is not entitled to judgment as a matter of law.

## CONCLUSION

For the reasons discussed above, we deny ServeFed's motion for summary judgment, and the government's cross-motion for summary judgment.

Dated: November 13, 2023

JAMES R. SWEET
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

J. REID PROUTY
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

12

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 63290, Appeal of ServeFed, Inc., rendered in conformance with the Board's Charter.

Dated:  November 13, 2023

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals

13